**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DCM GROUP INC. and PHANI KUMAR CHALUVADI, <br><br> *Plaintiffs*, <br><br> v. <br><br> ROBIN RAINA, <br><br> *Defendant*. | Civil Action No. 22-cv-1193 <br><br> **OPINION & ORDER** |

**John Michael Vazquez, U.S.D.J.**

This matter arises from a business dispute. Presently before the Court is Defendant Robin Raina's motion to dismiss or stay the proceedings. D.E. 3. Plaintiffs filed a brief in opposition, D.E. 15, to which Defendant replied, D.E. 21.[1] The Court reviewed the parties' submissions and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Defendant's motion is **DENIED**.

**I. BACKGROUND AND PROCEDURAL HISTORY**

As the parties are familiar with this matter, the Court does not provide a detailed factual recitation. Instead, the Court reviews relevant facts here and discusses certain additional facts in the analysis section below.[2] Plaintiff Phani Kumar Chaluvadi was the Chief Executive Officer of

---

[1] In this Opinion, the Court refers to Defendant's brief in support of his motion to dismiss (D.E. 3-1) as "Def. Br."; Plaintiffs' brief in opposition (D.E. 15) as "Plfs. Opp."; and Defendant's reply (D.E. 21) as "Def. Reply."

[2] The factual background is taken from Plaintiffs' Complaint (D.E. 1-1) and multiple certifications, affidavits, and declarations (and attached exhibits) submitted in support and opposition to the

DCM Group Inc. ("DCM") and i3, two software programming and consulting companies. Compl. ¶¶ 10-13. DCM was a New Jersey corporation located in Edison, New Jersey, where Chaluvadi also resides. *Id.* ¶ 5-6. i3's operational offices were in India but Chaluvadi managed i3's overall operations from New Jersey. Certification of Phani Kumar Chaluvadi ("Chaluvadi Cert.") ¶ 5, D.E. 15-1. Ebix Inc. ("Ebix") is a Georgia-based corporation that also provides consulting services and software products to clients around the world. Defendant Robin Raina is the Chief Executive Officer of Ebix. Compl. ¶¶ 15-16. In 2014, Raina and Chaluvadi engaged in discussions about Ebix's potential purchase of DCM and i3. *Id.* ¶ 16. According to Raina, Ebix was interested in DCM because of its "potential to strengthen Ebix's insurance service offerings." Declaration of Robin Raina ("Raina Decl.") ¶ 5, D.E. 3-4. Although Raina represents that he did not specifically seek business opportunities in New Jersey, he does not deny knowing that DCM was a New Jersey business. *Id.* ¶ 4. During these negotiations, Chaluvadi and Raina communicated via email and the phone. *Id.* ¶ 6; Chaluvadi Cert. ¶ 10-13, Exs. B, E.

        Chaluvadi agreed to sell the assets and business operations of both companies to Ebix, as reflected in an asset purchase agreement (the "Agreement") between Ebix and DCM. Compl. ¶¶ 33, 36. Plaintiffs maintain that Raina made misrepresentations during the negotiations and engaged in conduct after entering into the Agreement to ensure that DCM did not meet an earnout target set in the Agreement. *Id.* ¶¶ 36-62. For example, Plaintiffs allege that Defendant caused Ebix to terminate i3 employees in India and DCM's sales force in New Jersey. *Id.* ¶ 37. Plaintiffs also allege that Defendant restructured procedures in New Jersey, which constrained employees'

---

instant motion. In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5), "matters outside the pleadings are admissible where they do not factually contradict the contents of the Complaint." *Isaac v. Sigman*, No. 16-5345, 2017 WL 2267264, at *4 n.5 (D.N.J. May 24, 2017).

ability to generate sales. *Id.* ¶ 40. During this alleged wrongful conduct, Raina communicated with a DCM employee in New Jersey about DCM's business operations. Plaintiffs identify approximately 150 emails from Raina after the Agreement was executed. Chaluvadi Cert., Ex. J. Finally, Raina resided in Georgia during the alleged wrongful conduct but moved to India in 2019. Raina Decl. ¶ 3.

Plaintiffs filed suit in New Jersey state court on August 5, 2021, asserting claims for fraud in the inducement (Count One), negligent misrepresentation (Count Two), and tortious interference with contract and prospective economic advantage (Count Three). *See* D.E. 1-1. Approximately five months later, Plaintiffs filed a motion for entry of an order authorizing substituted service on Raina. Plaintiffs asked for permission to serve Raina via email and at Ebix's office in India through a commercial courier. *See* Affidavit of Mitchell B. Seidman ("Seidman Aff.") ¶ 2, D.E. 3-3. Plaintiffs sought substituted service "rather than having to continue with lengthy, time-consuming, expensive technical service efforts under the Hague Convention." *Id.* ¶ 7. On February 4, 2022, Judge Bruce J. Kaplan, J.S.C., granted Plaintiffs' unopposed motion, authorizing substituted service on Defendant by serving him via "electronic mail and by commercial courier . . . at the corporate offices of EbixCash Private Limited (Noida)" in Uttar Pradesh, India. D.E. 1-2. Plaintiffs emailed a copy of the summons and complaint to Defendant's work email address and sent the same documents to Raina at Ebix's office in India, via UPS and Federal Express, on February 9, 2022. *See* Aff. of Service of Process, D.E. 1-3 at ¶¶ 5-6.

On March 4, 2022, Defendant removed the matter to this Court, and subsequently filed the instant motion to dismiss or stay.[3] Defendant seeks to dismiss the Complaint pursuant to Federal

---

[3] In his Notice of Removal, Defendant expressly challenged the sufficiency of service of process. *See, e.g.*, Notice of Removal ¶ 3.

Rule of Civil Procedure 12(b)(5) for insufficient service of process and for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). In the alternative, Defendant maintains that this case should be stayed until a related arbitration proceeding in Georgia is resolved. D.E. 3. Plaintiffs oppose the motion. D.E. 15.

## II. LAW AND ANALYSIS

Raina seeks to dismiss the Complaint, in part, pursuant to Rule 12(b)(5), which permits dismissal for insufficient service of process. Def. Br. at 20-24. "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirements of service of summons must be satisfied." *Wahab v. N.J. Dep't of Env't Prot.*, No. 12-6613, 2017 WL 4790387, at *5 (D.N.J. Oct. 24, 2017) (quoting *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)). "[T]he party asserting the validity of service bears the burden of proof on that issue." *Grand Ent. Grp. v. Star Media Sales*, 988 F.2d 476, 488 (3d Cir. 1993). "To determine the validity of service before removal, a federal court must apply the law of the state under which service was made." *Granovsky v. Pfizer*, 631 F. Supp. 2d 554, 560 (D.N.J. 2009). Here, the parties agree that Plaintiffs attempted to served Raina under New Jersey law. The parties, however, disagree as to whether the service comported with New Jersey law.

Pursuant to New Jersey law, the "primary method" to effect service is to personally serve an individual in New Jersey. N.J. Ct. R. 4:4-4(a). If "a plaintiff's reasonable, good-faith attempt to effectuate personal service proves unsuccessful, the plaintiff may then attempt to effectuate service using the secondary methods prescribed in the court rules." *K.A. v. J.L.*, 161 A.3d 154, 157 (N.J. Super. Ct. Ch. Div. 2016). The secondary methods include "personal service outside the territorial jurisdiction of the United States, in accordance with any governing international treaty or convention to the extent required thereby." N.J. Ct. R. 4:4-4(b)(1). The Hague Service

4

Convention ("Hague Convention") is the applicable "governing international treaty or convention." *Gapanovich v. Komori Corp.*, 605 A.2d 1120, 1122 (N.J. App. Div. 1992). As a last resort, "[i]f service cannot be made by any of the modes provided by this rule, any defendant may be served as provided by court order, consistent with due process of law." N.J. Ct. R. 4:4-4(b)(3).

Plaintiffs contend that they served Raina by complying with the substituted service order. Aff. of Service of Process ¶ 8. Defendant maintains that the court order was not in accordance with New Jersey law. Specifically, Defendant argues that service through court order is only permissible if service cannot be effectuated under other provisions of the Rule 4:4-4. Def. Br. at 23. Defendant continues that "Plaintiffs' [sic] did not claim that they 'cannot' make service through the Hague Convention. They just did not want to wait." *Id.* Plaintiffs counter that they properly served Raina because they complied with the court order. Plfs. Opp. at 21, 24. Plaintiffs also contend that Defendant's argument about whether the substituted service order was appropriate "resorts to the splitting of hairs" and that Plaintiffs fully explained to the state court why service "pursuant to the Hague was logistically and practically impossible." *Id.* at 25. Thus, Plaintiffs continue that the substituted service order was appropriate. *Id.*

In challenging Plaintiffs' service, Defendant implicitly argues that the state court judge erred in entering the substituted service order. When a state court case is removed to federal court, the case "will then proceed as if it had been brought in the federal court originally." *Cooper Health Sys. v. Virtua Health, Inc.*, 259 F.R.D. 208, 212 (D.N.J. 2009). As a result, orders entered by the state court "remain in full force and effect until dissolved or modified by the district court." *Id.* (citing 28 U.S.C. § 1450). The state court order permitting substituted service is an interlocutory order. A court can modify an erroneous interlocutory order until entry of final judgment. Fed. R. Civ. P. 54(b). "[A]s long as the district court has jurisdiction over this case, it possesses inherent

power over interlocutory orders, and can reconsider them when it is consonant with justice to do so." *In re Anthanassious*, 418 F. App'x 91, 95 (3d Cir. 2011) (quoting *United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973)). Thus, "a trial judge convinced that an earlier ruling was wrong has . . . authority to reconsider and rectify the error." *Id.* (quoting 18B Edward Cooper, Federal Practice and Procedure: Jurisdiction § 4478.1 (2d ed. 2002)). A judge should exercise this discretion "whenever it appears that a previous ruling, even if unambiguous, might lead to an unjust result." *Id.* (quoting *Swietlowich v. Bucks County*, 610 F.2d 1157, 1164 (3d Cir. 1979)).

Here, it appears that technically, Judge Kaplan skipped a step before permitting substituted service. Defendant is correct that a defendant may be served as provided by court order, *only if* "service cannot be made by any of the modes provided by [N.J. Ct. R. 4:4-4]." N.J. Ct. R. 4:4-4(b)(3). Despite Plaintiffs' present argument that they explained to Judge Kaplan why service pursuant to the Hague Convention was logistically and practically impossible, Plf. Opp. at 25, this representation is not reflected in the affidavit in support of the motion for substituted service. Namely, Plaintiffs did not represent that they could not serve Defendant via the Hague Convention. Instead, they stated that the attempt at service via the Hague Convention was "in process" and "will take some time." Seidman Aff. ¶ 32. Plaintiffs, in essence, represented that they did not want to continue their efforts to serve pursuant to the Hague Convention. Accordingly, Rule 4:4-4 dictates that Judge Kaplan should not have permitted Plaintiffs' request for substituted service.

However, "[w]here due process has been afforded a litigant, technical violations of the rule concerning service of process do not defeat the court's jurisdiction." *Citibank, N.A. v. Russo*, 759 A.2d 865, 868 (N.J. Super. Ct. App. Div. 2000) (quoting *Rosa v. Araujo*, 616 A.2d 1328 (N.J. Super. Ct. App. Div. 1992)). Due process "requires only 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them the

opportunity to present their objections.'" *Wohlegmuth v. 560 Ocean Club*, 695 A.2d 345, 348 (N.J. Super. Ct. App. Div. 1997) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Consequently, "imperfect service has been found sufficient where a defendant had actual notice of the lawsuit prior to the entry of judgment." *Romeo v. Gold Star Distrib., LLC*, 257 A.3d 1192, 1208 (N.J. Super. App. Div. 2021).

As discussed, Plaintiffs emailed and sent Defendant a copy of the summons and complaint to Ebix's office in Uttar Pradesh via FedEx and UPS. Defendant states that he did not receive the documents sent to Uttar Pradesh. Raina Decl. ¶ 7. Raina, however, does not mention the email service. The Court presumes that Raina received the service email. Plaintiffs used the same email address that Chaluvadi and the DCM employee used when communicating with Raina during the events at issue in this litigation. *See* Chaluvadi Cert., Exs. D, E, J; Seidman Cert., Ex. R. Moreover, Plaintiffs did not receive an error or bounce back notice when serving Raina via email.

In addition, before obtaining the substituted service order, Plaintiffs' attorney emailed Peter Munk, Esq., who represented Defendant in the related arbitration and is appearing *pro hac vice* in this matter. In their email exchange, Mr. Munk confirmed that Defendant had moved to India but did not provide a home address. Mr. Munk also advised Plaintiffs' attorney that he could not accept service on Raina's behalf. Seidman Aff. ¶ 25. About one week later, Plaintiffs' attorney sent an additional email to Defendant's attorney and Defendant advising them of the matter, asking Defendant to acknowledge service. *Id.* ¶ 29. Finally, Defendant removed the matter to this Court and filed the instant motion. Thus, while service on Raina was not technically in accordance with the New Jersey Court Rules, Raina clearly has notice of this matter.

When evaluating a motion to dismiss for insufficient process, district courts have "broad discretion." *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992). "Where a plaintiff acts in good

7

faith, but fails to effect proper service of process, courts are reluctant to dismiss an action." *Ramada Worldwide, Inc. v. Shriji Krupa, LLC*, No. 07-2726, 2013 WL 1903295, at *6 (D.N.J. Apr. 17, 2013). Rather, if there is a reasonable prospect that service can be properly effectuated, courts quash service and provide a plaintiff with additional time to serve a defendant. *See id.* (recommending that plaintiff be afforded with an additional sixty days to effect proper service after finding service was attempted in good faith but to the wrong address). Moreover, 28 U.S.C. § 1448 provides that for removed cases "in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court." 28 U.S.C. § 1448; *see also Lukawewicz v. Valtris Specialty Chem. Co.*, No. 21-4128, 2021 WL 1997397, at *5 (D.N.J. May 17, 2021) (explaining that "Section 1448 allows a plaintiff to prospectively complete or newly issue service" but does not "permit the Court to render effective Plaintiff's past, flawed attempts at service").

Although Raina has notice of this matter, out of an abundance of caution, this Court will quash service and provide Plaintiffs with additional time to effect service on Raina in accordance with the Federal Rules of Civil Procedure. Because the Court is providing Plaintiffs with additional time to effect service, the Court does not reach Defendant's remaining arguments for dismissal[4] or his request to stay this matter until resolution of the related arbitration.

---

[4] Defendant argues that this Court lacks personal jurisdiction, in part, because Raina did not specifically market or seek business opportunities in New Jersey, such that his contacts with the state were random and fortuitous. Def. Br. at 14-15. While not deciding Defendant's motion, the court notes that other courts have concluded that there was personal jurisdiction over a defendant based on similar conduct as alleged here. *See, e.g.*, *Bachmann Software & Servs. v. Intouch Grp., Inc.*, No. 08-2025, 2008 WL 2875680, at *10 (D.N.J. July 22, 2008) (finding personal jurisdiction for tort claims asserted against out-of-state defendant with no physical presence in New Jersey where "the record shows that the defendant expressly aimed its conduct at New Jersey by negotiating the new agreement with a New Jersey resident, sending communications to New Jersey, sending a signed copy of the new agreement to New Jersey, engaging in numerous communications while plaintiff performed services for defendant's benefit in New Jersey, . . . and

8

### III. CONCLUSION

For the foregoing reasons, and for good cause shown,

IT IS on this 18th day of August, 2022,

**ORDERED** that Defendant's motion to dismiss (D.E. 3) is **DENIED** without prejudice; and it is further

**ORDERED** that service is quashed as to Defendant Robin Raina and Plaintiffs are provided with one hundred twenty (120) days to effect proper service of process in accordance with the Federal Rules of Civil Procedure; and it is further

**ORDERED** that the Clerk's Office is directed to reissue summons as to Defendant Raina.

_____
John Michael Vazquez, U.S.D.J.

---

failing to make payment as promised to the plaintiff in New Jersey"); *see also Trinity Packing Supply, LLC v. Countrywide Pallet, Inc.*, No. 18-16115, 2019 WL 2611101, at *7 (D.N.J. June 26, 2019); *Network Commodities, LLC v. Golondrinas Trading Co., LTD.*, No. 11-3119, 2013 WL 1352234, at *6 (D.N.J. Apr. 1, 2013).