**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DCM GROUP, INC. & PHANI KUMAR CHALUVADI | |
| Plaintiffs, | No. 22cv1193 (EP) (MAH) |
| v. | **OPINION** |
| ROBIN RAINA | |
| Defendant. | |

**PADIN, District Judge.**

This matter arises from a business dispute involving multiple individuals and entities.  D.E. 1-1 ("Complaint" or "Compl.").  Plaintiffs are Phani Kumar Chaluvadi and DCM Group, Inc. ("DCM"), (collectively, "Plaintiffs").  Chaluvadi was the CEO and sole shareholder of DCM.  He was also the CEO of i3 Private Limited ("i3").  During the relevant time period, Defendant Robin Raina was the CEO of Ebix Inc. ("Ebix").

Suits arising from the same set of underlying facts have been litigated in other forums, including an arbitration in which Ebix prevailed.  Now, Plaintiffs bring claims for fraud in the inducement, negligent misrepresentation, and tortious interference with contract and prospective economic advantage against Raina personally.  Raina moves to dismiss the Complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  D.E. 89 ("Motion" or "Mot").  Plaintiff opposes.  D.E. 90 ("Opposition" or "Opp'n").  Defendant replies.  D.E. 91 ("Reply").

The Court has reviewed the parties' submissions and decides the Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the Court will **GRANT** Defendant's Motion.

I.    **BACKGROUND**[1]

A.    **The Underlying Business Dispute**

Because the parties have litigated this matter extensively, the Court assumes familiarity with the facts and only includes those relevant to this opinion. Plaintiff Phani Kumar Chaluvadi was the CEO of DCM and i3, two software programming and consulting companies. Compl. ¶¶ 10-13. DCM was headquartered and had its principal place of business in New Jersey, which is also where Chaluvadi resides.[2] *Id.* ¶¶ 5-6. Ebix, incorporated in Illinois and headquartered in Georgia, also provides consulting services and software products. *Id.* ¶ 14. Defendant Robin Raina is Ebix's CEO. Compl. ¶¶ 15-16. Raina is a United States citizen who has been living in India since 2019. D.E. 89-2, Declaration of Robin Raina ("Raina Decl.") ¶ 3. At the time of the conduct alleged in the Complaint, Raina was living in the state of Georgia. *See* Mot. at 3.

At some point, Sherman & Co., a North Carolina-based investment bank, introduced the parties for a potential deal. Compl. ¶ 30. Around November 2014, Raina and Chaluvadi discussed Ebix acquiring DCM and i3. *Id.* ¶ 16. During these negotiations, Chaluvadi and Raina communicated via email and phone. Chaluvadi Cert. ¶¶ 10-13, Exs. B, E. Raina proposed an

---

[1] The facts in this section derive from several sources, including the Complaint's well-pled factual allegations and the attachments thereto (which the Court presumes to be true for purposes of resolving this Motion), *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), as well as matters of public records, including state court judgments, *see Scalercio-Isenberg v. Select Portfolio Servicing, Inc.*, No. 22-2705, 2024 WL 378652, at *5 (D.N.J. Jan. 31, 2024) (internal citation omitted). The Court also relies on a previous opinion and order issued in this matter from the Hon. John Michael Vazquez, U.S.D.J., D.E. 34 ("Previous Opinion").

[2] Although i3 was headquartered in India, Chaluvadi managed its overall operations from New Jersey. Previous Opinion at 2 (citing D.E. 15-1, Certification of Phani Kumar Chaluvadi ("Chaluvadi Cert.") ¶ 5).

2

agreement in which Ebix would pay a smaller amount for DCM's and i3's assets upon closing and make subsequent "earn-out" payments provided that the combined business[3] of DCM and i3, once a part of Ebix, met certain threshold revenues.  Compl. ¶¶ 17-18.  Plaintiffs allege that Raina made the following representations during the negotiations:

- (i) Ebix would structure the earn-out thresholds so that Plaintiffs could readily achieve them;

- (ii) Ebix would provide logistic and operational support to enable Plaintiffs to achieve the earn-out thresholds;[4]

- (iii) Plaintiffs should consider the earn-out an assured part of the compensation for the purchase of the business assets and operations of DCM and i3;

- (iv) Defendant or Ebix would provide financial assistance to Chaluvadi if he was ultimately liable for a brokerage fee to Sherman;[5] and

- (v) Ebix would include the gross revenues of any acquisition identified by Chaluvadi in the earn-out thresholds under the DCM Agreement.[6]

*Id.* ¶ 64.

In reliance on Raina's promises, in December 2014, Chaluvadi agreed to sell the assets and business operations of DCM and i3 to Ebix under the terms in the asset purchase agreement[7] (the "Agreement").  *Id.* ¶¶ 16, 33, 35, 36.  The Agreement provided for a $1,500,000 payment at the time of the closing as the combined purchase price for DCM and i3.  Agreement § 3.1.  In addition,

---

[3] The combined operations of DCM and i3 would become the property and casualty consulting division of Ebix (the "P&C Consulting Division").

[4] *See also id.* ¶ 19.

[5] *See also id.* ¶ 30.

[6] *See also id.* ¶¶ 50-56.  These allegations were withdrawn.  Opp'n at 29 n.13.

[7] The Court refers to the copy of the Agreement attached to Raina's first motion to dismiss, D.E. 15-9.

the Agreement included various performance based earn-outs for Chaluvadi for up to $5 million depending on certain revenue thresholds being met.  *See id.*

Things took a turn for the worse shortly after the deal was signed.  According to Plaintiffs, despite his representations that he would help DCM and i3 to achieve the earn-outs outlined in the Agreement, Raina actually planned to make it impossible for them to do so.  Compl.  ¶¶ 21-22, 65. Defendant's agenda was to engage in "cookie jar accounting," a practice which would allow Ebix to record the earn-out liabilities it would owe Plaintiffs on its balance sheet, and then subsequently reverse the liability once the earn-outs were not achieved.  *Id.* ¶¶ 23-25.  Defendant allegedly engaged in this practice to "artificially inflate Ebix's revenues and his own standing as its chief executive officer for the purpose of increasing his compensation."  *Id.* ¶ 27.

Plaintiffs allege Raina "intentionally interfered" in Plaintiffs' protected interests under the Agreement by:

- (i) Failing to provide the logistic and operational support to the P&C Consulting Division;

- (ii) Terminating and failing to rehire critical sales personnel and refusing to engage necessary consultants;

- (iii) Creating unworkable conditions for the division's India operations; and

- (iv) Failing to keep Chaluvadi informed of developments to acquire PB Systems and its performance after acquisition, failing to include the revenues of PB Systems in the calculation of the earnout threshold, and otherwise manipulating the operations and finances of the P&C Consulting Division.[8]

---

[8] Plaintiffs have withdrawn their fraud claim "founded upon representations made by Ebix (through Raina) that the revenues of PB Systems, newly acquired by Ebix, would be included in calculating Plaintiffs' earn-out."  Opp'n at 29 n.13.

*Id.* ¶ 93; *see also id.* ¶¶ 21, 36-62.

Some of Raina's alleged conduct involved restructuring DCM's procedures in New Jersey. *Id.* ¶ 40. In doing so, Raina repeatedly communicated with a DCM employee in New Jersey. Previous Opinion at 3 (citing Chaluvadi Cert., Ex. J).

### B.    Related Litigation (and Arbitration)

In August 2017, Plaintiffs brought suit in a federal court in Ohio.[9] One month later, Plaintiffs brought another suit in a federal court in Georgia.[10] In March 2020, Plaintiffs commenced an arbitration proceeding (the "Arbitration")[11] against Ebix and Raina in Atlanta, Georgia, for breach of the Agreement and related claims. D.E. 64-1 ("Final Arbitration Award") at 3. Raina was originally named a respondent in the Arbitration but was dismissed because he was not a party to the arbitration provisions of the Agreement. *Id.* at 4.

Subsequent to Raina's dismissal from the Arbitration, on August 5, 2021, Plaintiffs brought the present suit in New Jersey state court, in which they asserted claims for fraud in the inducement (Count One), negligent misrepresentation (Count Two), and tortious interference with contract and prospective economic advantage (Count Three) against Raina personally. Compl. On March 4, 2022, Raina removed the matter to this Court and filed a motion to dismiss or stay on the grounds of insufficient service or process and lack of personal jurisdiction. D.E. 3. On August 19, 2022, Judge Vazquez issued the Previous Opinion,[12] in which he denied Defendant's motion to dismiss

---

[9] *DCM Group, Inc. and Phani Kumar Chaluvadi v. Ebix, Inc.*, Civil No. 17-740 (S.D. Ohio). In this case, Defendant's motion to dismiss was granted.

[10] *DCM Group, Inc. and Phani Kumar Chaluvadi v. Ebix, Inc.*, Civil No. 17-3653 (N.D. Ga.) (the "Georgia Case").

[11] Under the Agreement, disputes were to be resolved by binding arbitration in Atlanta, Georgia. Agreement § 10.11.

[12] As discussed *infra*, Judge Vazquez did not resolve Raina's personal jurisdiction argument on the merits.

*without prejudice* to provide Plaintiffs with additional time to properly serve Raina, who was residing in India. Previous Opinion at 9.

Eventually, the Court stayed this matter pending the adjudication of the Arbitration. D.E. 59. On November 14, 2023, the Arbitrator issued the Final Arbitration Award, which was the third and final order in the Arbitration. On April 23, 2024, the Northern District of Georgia confirmed the Final Arbitration Award and entered a final judgment accordingly. *See* D.E. 84-1.

As both parties acknowledge, Ebix overwhelmingly prevailed in the Arbitration. The Arbitrator decided in favor of Ebix on all counts, including: breach of the Agreement; breach of the covenant of good faith and fair dealing with respect to the Agreement; breach of Chaluvadi's employment contract; breach of the covenant of good faith and fair dealing with respect to Chaluvadi's employment contract; and fraud, to the extent the claim is based upon fraudulent representations made after the Agreement was signed. Final Arbitration Award at 28. In deciding these counts, the Arbitrator addressed and resolved several factual contentions of Plaintiffs, such as whether Ebix terminated and failed to rehire critical sales personnel for illegitimate reasons, or whether the earn-out was assured to Chaluvadi. *See* Final Arbitration Award at 15.

After the final arbitration award was confirmed in the Georgia Case, Raina filed a second motion to dismiss in this matter. Mot.

## II.    LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(2)

Rule 12(b)(2) permits the dismissal of a case for lack of personal jurisdiction. It is the plaintiff's burden to demonstrate "the facts that establish personal jurisdiction." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). A Rule 12(b)(2) motion is "inherently a matter

which requires resolution of factual issues outside the pleadings, *i.e.*, whether *in personam* jurisdiction actually lies." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 101 (3d Cir. 2004).

Once the defense has been raised, a plaintiff must respond with actual proofs, not mere allegations. *See Importers Serv. Corp. v. Aliotta*, No. 22-4640, 2023 WL 3173568, at *3 (D.N.J. Apr. 28, 2023) (citing *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984)). In response, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1986)).

However, where a court "resolves the jurisdictional issue in the absence of an evidentiary hearing and without the benefit of discovery, the plaintiff need only establish a *prima facie* case of personal jurisdiction." *Otsuka Pharm. Co. v. Mylan Inc.*, 106 F. Supp. 3d 456, 461 (D.N.J. 2015). The reviewing court takes the plaintiff's well-pled allegations as true and construes all disputed facts in favor of the plaintiff. *See, e.g.*, *Miller Yacht Sales*, 384 F.3d at 97; *Carteret Sav. Bank*, 954 F.2d at 142 n.1. Moreover, the reviewing court "may always revisit the issue of personal jurisdiction if later revelations reveal that the facts alleged in support of jurisdiction remain in dispute." *Id.* at 462 n.5 (internal citation omitted).

### B.    Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pled facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (cleaned up). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public

record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

To survive a Rule 12(b)(6) challenge, the plaintiff's claims must be facially plausible, meaning that the well-pled facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft*, 556 U.S. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

"Rule 9(b) requires that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.'" *Simner v. LG Elecs. U.S.A., Inc.*, No. 21-13322, 2022 WL 3152707, at *3 (D.N.J. Aug. 8, 2022) (quoting Fed. R. Civ. P. 9(b)). A plaintiff "alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Park v. M & T Bank Corp.*, No. 09-02921, 2010 WL 1032649, at *5 (D.N.J. Mar. 16, 2010) (alteration in original) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).

## III.    ANALYSIS

### A.    Personal Jurisdiction

The Court will first address Raina's Rule 12(b)(2) assertion that the Complaint must be dismissed for lack of personal jurisdiction. *See Doyle v. Matrix Warranty Sols., Inc.*, No. 22-3198, 2023 WL 1794838, at *4 (D.N.J. Feb. 6, 2023); *see also Sinochem Int'l Co. v. Malaysia Int'l*

*Shipping Corp.*, 549 U.S. 422, 430-31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction).").

A federal court may exercise jurisdiction over a non-resident defendant to the extent authorized by state law within that forum. *Remick v. Manfredy,* 238 F.3d 248, 255 (3d Cir. 2000) (citing Fed. R. Civ. P. 4(e)). "The New Jersey long-arm rule extends to the limits of the Fourteenth Amendment Due Process protection." *Carteret Sav. Bank*, 954 F.2d at 145. "Personal jurisdiction under the Due Process Clause of the Constitution requires proof of a 'relationship among the defendant, the forum, and the litigation.'" *Bachmann Software & Servs. v. Intouch Grp., Inc.*, No. 08-2025, 2008 WL 2875680, at *5 (D.N.J. July 22, 2008) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

After a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff must demonstrate "that the moving defendant had sufficient contacts with the forum to justify the Court's assertion of either general or specific personal jurisdiction." *Id.* (citing *BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp.,* 229 F.3d 254, 259 (3d Cir. 2000)). The plaintiff's standard of proof varies depending upon the nature of the evidence presented to the Court for its consideration; like here, where no evidentiary hearing has taken place, the plaintiff must make out a *prima facie* case. *Id.* (citing *Miller Yacht Sales,* 384 F.3d at 97).

Because the Court provided Plaintiffs with additional time to effectuate service in its Previous Opinion, it did not decide on the merits whether this Court has personal jurisdiction over Raina. Previous Opinion at 8. Nevertheless, Judge Vaquez noted that:

> [O]ther courts have concluded that there was personal jurisdiction over a defendant based on similar conduct as alleged here. *See, e.g.*, *Bachmann Software & Servs. v. Intouch Grp., Inc.*, No. 08-2025, 2008 WL 2875680, at *10 (D.N.J. July 22, 2008) (finding personal jurisdiction for tort claims asserted against out-of-state

defendant with no physical presence in New Jersey where "the record shows that the defendant expressly aimed its conduct at New Jersey by negotiating the new agreement with a New Jersey resident, sending communications to New Jersey, sending a signed copy of the new agreement to New Jersey, engaging in numerous communications while plaintiff performed services for defendant's benefit in New Jersey, . . . and failing to make payment as promised to the plaintiff in New Jersey"); *see also Trinity Packing Supply, LLC v. Countrywide Pallet, Inc.*, No. 18-16115, 2019 WL 2611101, at *7 (D.N.J. June 26, 2019); *Network Commodities, LLC v. Golondrinas Trading Co., LTD.*, No. 11-3119, 2013 WL 1352234, at *6 (D.N.J. Apr. 1, 2013).

Previous Opinion at 4 n.4. Picking up what Judge Vazquez put down, Plaintiffs argue that this Court has personal jurisdiction over Raina. Opp'n at 4-5. Raina disagrees. Mot. at 28-39.

In the Third Circuit, "[t]here are different considerations in analyzing jurisdiction over contract claims and over certain tort claims." *Remick*, 238 F.3d at 255. As Plaintiffs bring both, the Court will analyze them in turn. As explained below, the Court agrees with Plaintiffs and finds it has specific jurisdiction over Defendant.

> 1. *Analysis of personal jurisdiction for Plaintiffs' contract claim (Count II)*

When analyzing personal jurisdiction over a defendant for a contract-based claim, the Court considers "the totality of the circumstances surrounding a contract to determine whether the exercise of jurisdiction over the defendant is proper." *Miller Yacht Sales*, 384 F.3d at 99 (citing *id.* at 256). "[C]ourts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract *or* its breach." *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006) (cleaned up); *see also Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*, 75 F.3d 147, 151 (3d Cir. 1996) ("In determining whether specific jurisdiction exists, . . . we consider not only the contract but also prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.").

The Court employs a three-part test to determine whether it has specific jurisdiction over a defendant. For specific jurisdiction to rest in the Court: *first*, the defendant must have purposefully directed his activities at the forum; *second*, the plaintiff's claim must arise out of or relate to at least one of those specific activities; and *third*, the Court may consider additional factors to ensure that the assertion of jurisdiction otherwise comports with fair play and substantial justice. *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007).

a.    Minimum contacts

Communications with forum residents in writing and via phone "can empower a court to exercise personal jurisdiction over persons outside the forum" if the defendant's activities in the forum reflect purposefully availing himself of the privilege of conducting activities in the forum. *Grand Enter. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) (citing *Carteret Sav. Bank*, 954 F.2d at 147-48). For example, the New Jersey Supreme Court found specific jurisdiction over a defendant who allegedly phoned the plaintiff (his counterparty) to finalize details of a contract, mailed the contract to the plaintiff in New Jersey, and received payment from the plaintiff, who defendant knew was a New Jersey resident. *Lebel v. Everglades Marina, Inc.*, 115 N.J. 317, 324-25 (1989).

Similarly, the parties engaged in nearly 30 email exchanges during the negotiation of the Agreement—a contract to acquire a company headquartered and with its principal place of business in New Jersey. Chaluvadi Cert. ¶ 12. At least seven of these email exchanges were initiated by Raina. *Id.* On behalf of Ebix, Raina negotiated to pay $1,500,000 for DCM and i3, which was subsequently paid to a New Jersey resident (Chaluvadi) at closing. *See id.* ¶ 23. Further, pursuant to the Agreement, DCM and its employees based in New Jersey, including Chalvuadi, would become employees of Ebix. In *Grand Enterprise Group*, personal jurisdiction

11

was found over a defendant who directed at least twelve communications into the forum state and who engaged in negotiations for an agreement that would have created rights and obligations among citizens of that state. 988 F.2d at 482-83. According to the Third Circuit, the defendant there "deliberately and personally directed significant amount of activities towards the state including numerous phone calls and mail from his agent," and the defendant's "personal, intentional communications gave rise to the underlying suit. . . ." *Id.* at 483. Raina too "voluntarily decided to negotiate with [an individual in New Jersey,]" and now, he cannot "be heard to complain about answering a suit concerning the effect of negotiations in the jurisdiction in which some of those negotiations occurred." *Id.*

In addition, Raina's alleged post-Agreement conduct shows even more contact with New Jersey. This conduct includes Raina allegedly "immediately caus[ing] Ebix to restructure the administrative procedures in the New Jersey office of the P&C Consulting Division" and sending a key employee of DCM located in New Jersey nearly 150 emails. Chaluvadi Cert. ¶ 22 & Ex. J. Plus, Ebix assumed the property rental lease of DCM located in Iselin, New Jersey. Agreement § 2.7. Such extensive post-contract conduct with parties in the forum state lends additional support for finding minimum contacts. *See Vetrotex*, 75 F.3d at 153.

In an attempt to downplay his connections to the State, Raina makes several arguments, including that he has never lived or worked in New Jersey;[13] that he learned of DCM through an investment bank;[14] that Chaluvadi's presence in New Jersey was "random" and "fortuitous";[15] that

---

[13] Raina Decl. ¶ 3.
[14] *Id.* ¶ 4.
[15] Mot. at 32.

DCM's presence in New Jersey held no strategic or economic value for Ebix or Raina;[16] and that much of Chaluvadi's business was in India.[17]

The Court finds these arguments unavailing. It is well established that actual "[p]hysical presence within the forum is not required to establish personal jurisdiction over a nonresident defendant." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). And even if Defendant was introduced to DCM through a third-party, he continued to negotiate with Mr. Chaluvadi afterward; the fact he did not set out to target a New Jersey-based company does not change the fact he negotiated with (and acquired) one on behalf of the company he ran. "The question is whether 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Lebel*, 115 N.J. at 324 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 *U.S.* 286, 297 (1980)).

The Court agrees with Plaintiffs that "Raina intentionally engaged in negotiations with Chaluvadi for the acquisition by Ebix of DCM and he did so knowing full well that Chaluvadi was a New Jersey resident and that DCM was a New Jersey corporation with its principal offices in New Jersey." Opp'n at 10. Put simply, it is not "random" for the acquirer of a New Jersey-based company to be brought into Court in New Jersey to resolve a dispute related to that acquisition. Relatedly, the fact that i3 was based in India does not change that DCM was based in New Jersey. Finally, the Court is not persuaded by Defendant's argument that he was acting in his capacity as CEO of Ebix, as "[a]ctivities of a party's agent may count toward the minimum contacts necessary to support jurisdiction." *Grand Ent. Grp.*, 988 F.2d at 483.[18] Thus, the Court concludes that

---

[16] *Id.* at 14.

[17] *Id.*

[18] Defendant cites *Shapiro v. Sun Life Assurance Co.*, 117 F.R.D. 550, 556 (D.N.J. 1987) for the proposition that employees lacked minimum contacts with the forum state when they acted as a "mere conduit" to their employer's corporate policy. Mot. at 33. Unlike the employees in *Shapiro*,

Defendant had sufficient minimum contacts with the forum state with respect to Plaintiff's contract claim.

### b.    *Arising out of Defendant's conduct*

It is also clear that Plaintiffs' contract claim arises out of these contacts as the impetus of their claims arises from Defendant's pre-Agreement communications with Chaluvadi.  Opp'n at 8.

### c.    *Fair play and substantial justice*

"In addition to demonstrating that the defendant has sufficient minimum contacts with New Jersey, this Court must determine whether the exercise of jurisdiction over the defendant accords with the notions of fair play and substantial justice."  *Bachmann*, 2008 WL 2875680, at *11 (cleaned up).  To do so, the Court considers several factors, including the burden on the defendant, the interests of the forum state, plaintiff's interest in obtaining relief, and the interstate judicial system's interest in obtaining efficient resolution of controversies.  *XL Specialty Ins. Co. v. Westmoreland Coal Co.*, No. 06-1234, 2006 WL 1783962, *10 (D.N.J. June 26, 2006) (citing *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano County*, 480 U.S. 102, 113 (1987)). "The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy."  *Grand Enter. Grp.*, 988 F.2d at 483.

Here, the assertion of jurisdiction over Defendant comports with fair play and substantial justice.  New Jersey has a "legitimate interest in carrying out its own law" and protecting its residents.  *Lebel*, 115 N.J. at 329.  Also, with respect to Plaintiffs' ability to obtain relief, Plaintiffs have a "strong interest in obtaining relief in [their] home state as [they] feel[] the financial impact

---

who were a claims administrator and an office manager, Defendant was the CEO of Ebix.  Thus, he was not following corporate policy, he was making it.

of defendant's alleged non-payment here." *Bachmann*, 2008 WL 2875680, at *12 (citing *CDI Intern., Inc. v. Marck*, No. 04-4837, 2005 WL 146890, * 4 (E.D. Pa. Jan. 21, 2005)).  Again, Defendant argues he was acting on the company's behalf, and thus *he* is not subject to this Court's jurisdiction.  Mot. at 34-35.  However, "'[a]n officer of a corporation who [allegedly] takes part in the commission of a tort by the corporation is personally liable.'"  *Al-Khazraji v. Saint Francis College*, 784 F.2d 505, 518 (3d Cir. 1986) (quoting *Zubik v. Zubik,* 384 F.2d 267, 275-76 (3d Cir. 1967), *cert. denied*, 390 U.S. 988 (1968).  To allow Defendant to avoid being called into court to litigate a dispute related to his alleged tortious conduct in negotiating an acquisition on behalf of the company he runs would be permitting him "us[ing] the corporate shield to protect himself from suit in the forum."  *Beistle Co. v. Party U.S.A., Inc.*, 914 F. Supp. 92, 96 (M.D. Pa. 1996).  Defendant also argues that he lives overseas, and therefore, exercising jurisdiction would offend fair play and substantial justice in that respect.  Mot. at 34-35.  Although the Court recognizes that Defendant lives overseas and coming to New Jersey poses a burden, the Court does not view litigating this matter to cause an undue burden on Defendant, a sophisticated individual who at one point was the CEO of an international corporation.

As such, the Court concludes that exercising personal jurisdiction over Defendant would comport with the notion of fair play and substantial justice.  No factor shows that an exercise of jurisdiction would be unfair or unreasonable. For all of these reasons, the Court can properly exercise specific personal jurisdiction over Defendant as to Plaintiffs' contract claim.

2.    *Analysis of personal jurisdiction for Plaintiffs' tort claims (Counts I and III)*

Unlike with a contract claim, for a tort-based claim, the Court must apply the "effects test" established in *Calder v. Jones*, 465 U.S. 783 (1984).  "A court may exercise personal jurisdiction over a nonresident defendant who commits an intentional tort by certain acts outside the forum

which have a particular type of effect upon the plaintiff within the forum." *IMO Indus.*, 155 F.3d at 261; *see also Carteret Sav. Bank*, 954 F.2d at 147 (noting that an allegation of an intentional tort has special importance when assessing the reasonableness of an exercise of personal jurisdiction over a nonresident defendant).

Under this test, a plaintiff must show that: "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the resulting harm; and (3) the defendant expressly aimed its tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." *Id.* at 265-66 (footnote omitted). "Thus, if the cause of action arise[s] out of or relates to the defendant's forum-related activities, then particular or sporadic contacts will be sufficient to justify the exercise of specific personal jurisdiction." *Bachmann*, 2008 WL 2875680, at \*9 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.8 (1984)). The Court addresses all three prongs in turn.

Plaintiffs have satisfied the first prong of the *Calder* effects test by alleging tort-based claims against Raina personally (fraud in the inducement and tortious interference with contract and prospective economic advantage). *See Remick*, 238 F.3d at 258.

Plaintiffs have also felt the brunt of the pain in New Jersey. When a plaintiff is a resident of the forum state and the victim of an alleged tortious interference of contract, the "brunt of the harm caused by the alleged intentional tort must necessarily have been felt by [plaintiff] in [the forum state], as his business practice is based in [the forum state]." *Id.* at 260. A plaintiff can also feel the brunt of the harm in the forum state when the forum state contains the plaintiff's principal place of business and where the defendant owed payments pursuant to the contract. *Mendelsohn, Drucker & Assocs. v. Titan Atlas Mfg., Inc.*, 885 F. Supp. 2d 767, 782 (E.D. Pa. 2012). For these

16

reasons, Plaintiffs claim they felt the brunt of the pain in New Jersey, Opp'n at 14, and Raina does not dispute that claim. *See* Reply.

Finally, "the plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *IMO Indus.*, 155 F.3d at 266. Building on *Remick's* conclusion that the effects of intentional conduct by a defendant designed to interfere with contractual relations would be felt in the forum state, the Third Circuit in *Wellness Publishing v. Barefoot* reasoned that alleged intentional interference "was expressly aimed at the forum" as the contract's beneficiary was a resident of the forum state. 128 F. App'x 266, 270 (3d Cir. 2005); *see also Vector Sec., Inc. v. Corum*, No. 03-741, 2003 WL 21293767, at *4 (E.D. Pa. Mar. 21, 2003) (concluding that defendant expressly aimed fraudulent conduct at forum by sending and directing emails to the plaintiff in the forum). The record shows that Raina aimed his conduct at New Jersey by, *inter alia*, negotiating the Agreement with a New Jersey resident to acquire a New Jersey-based company (and taking over its lease), sending nearly 200 emails to at least two New Jersey residents, allegedly changing the administrative procedures of the newly created P&C Consulting division (of which DCM and i3 were a part of), and allegedly failing to make the earn-out payments. Therefore, Plaintiffs have satisfied the *Calder* test. *See Bachmann*, 2008 WL 2875680, at *10.

### B.    Collateral Estoppel

Collateral estoppel, also known as issue preclusion, is a doctrine which bars parties from relitigating factual and legal issues determined by a "final and valid" judgment in any future lawsuit. *United States v. Rigas*, 605 F.3d 194, 217 (3d Cir. 2010) (internal quotations omitted). A district court sitting in diversity applies the collateral estoppel rules of the state in which it sits.

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 310 (3d Cir. 2009) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)).  In New Jersey, a court may apply issue preclusion where: (1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; (4) the determination was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.  *Allen v. V & A Bros.*, 26 A.3d 430, 444 (N.J. 2011).  Traditionally, for issue preclusion to apply, parties on both sides of the latter proceeding must have been bound by the prior judgment, but "[t]he modern trend favors modification of the strict rule of mutuality of parties, in favor of a more pragmatic, case-by-case approach."  *Zirger v. Gen. Acc. Ins. Co.*, 144 N.J. 327, 337-38 (1996).

Defendant argues that Plaintiffs' claims are barred by issue preclusion.  Mot. 16-21.  Plaintiffs do not contest the latter three elements.  Opp'n at 29-34.  Plaintiffs therefore have waived any opposition thereto.  *See Alsaidi v. City of Paterson*, No. 22-6697, 2024 WL 4053085, at *4 (D.N.J. Sept. 5, 2024) (citing *Griglak v. CTX Mortg. Co., LLC*, No. 09-5247, 2010 WL 1424023, at *3 (D.N.J. Apr. 8, 2010)); *see also In re Rite Aid Corp. Sec. Litig.*, No. 22-4201, 2025 WL 968306, at *1 (E.D. Pa. Mar. 31, 2025) (collecting cases all noting that failure to substantively respond to an argument contained within a motion to dismiss constitutes waiver to those claims or arguments).

Plaintiffs offer two reasons why Defendant cannot establish the first element—that the issues sought to be precluded in this matter are the same as those decided in the Arbitration:  (1) because the Arbitration decided contract claims only, with entirely distinct elements from the claims asserted here arising in tort; and (2) because the claims asserted in the Arbitration were

18

decided entirely under Georgia law (as opposed to New Jersey law), and there can be no identity of issues where the earlier proceeding is governed by a different State's law.  Opp'n at 29.

As to Plaintiff's first point, "New Jersey follows the usual rule that collateral estoppel bars litigation of facts fully litigated and actually determined in a prior action, even one involving a different claim or cause of action."  *See Neal v. ASTA Funding, Inc.*, No. 13-3438, 2019 WL 522095, at *7 (D.N.J. Feb. 8, 2019) (citing *Tarus v. Pine Hill*, 189 N.J. 497, 520 (2007)). Therefore, issue preclusion prevents Plaintiffs from relitigating facts established in the Arbitration, even if they were determined in a different context.

*Second*, the Court disagrees with Plaintiffs that there can be no identity of issues where the earlier proceeding is governed by a different State's law.  As courts in this Circuit have explained, when determining whether an issue is "identical" between litigations, the issues must be "in substance the same."  *Pasqua v. Cnty. of Hunterdon*, No. 15-3501, 2017 WL 5667999, at *15 (D.N.J. Nov. 27, 2017).  Thus, "[t]o defeat a finding of identity of the issues for preclusion purposes, the difference in the applicable legal standard must be *substantial*."  *Raytech Corp. v. White*, 54 F.3d 187, 191 (3d Cir. 1995); *see also* 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4417, at 461-62 (3d ed. 2025) ("[T]he laws of different states may give different meanings to the same legal terms, just as happens with federal law and a single state's law.  At the same time, careful examination of the controlling legal principles may show that the standards are the same, or that the fact findings have the same effect under either standard, so that the same issue is presented by both systems of law." (footnotes omitted)).

In assessing similarity, courts consider several factors, including "whether there is substantial overlap of evidence or argument in the second proceeding; whether the evidence

involves application of the same rule of law; whether discovery in the first proceeding could have encompassed discovery in the second; and whether the claims asserted in the two actions are closely related." *Strassman v. Essential Images*, No. 17-4227, 2018 WL 1251636, at *5-6 (D.N.J. Mar. 12, 2018) (quoting *First Union Nat'l Bank v. Penn Salem Marina, Inc.*, 921 A.2d 417, 424 (N.J. 2007). At bottom, a court should ask: is "'there [] a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?' and 'how closely related are the claims involved in the two proceedings?'" *Peloro v. United States*, 488 F.3d 163, 176 (3d Cir. 2007) (quoting Restatement (Second) of Judgments § 27, cmt. c (1982)).

Here, although both cases arise from the same set of facts and involve the same individuals, Plaintiffs maintain that the claims in this action are governed by New Jersey law, while the Arbitration was governed by Georgia law. The Court must therefore determine whether the Georgia and New Jersey laws at issue are substantially similar.

As shown below, Plaintiffs fail to show that any difference between the laws of New Jersey and Georgia is substantial. This is primarily because the distinctions Plaintiffs raise do not ultimately result in the Court considering new or different issues of fact. The Court cannot reconsider facts which the Arbitrator already decided, and without those facts, Plaintiffs cannot identify a substantial difference between the laws of New Jersey and Georgia with respect to the claims brought in this action. Therefore, issue preclusion is appropriate.

*1.    Fraud in the inducement and negligent misrepresentation*

Plaintiffs assert that there is a conflict between the laws of Georgia and New Jersey as to Plaintiffs' fraudulent inducement claims. Specifically, under the laws of Georgia, the existence of a merger clause in an agreement allegedly induced by a fraudulent representation will bar a claim for fraudulent inducement, whereas in New Jersey, "'a party to an agreement cannot, simply by

means of a provision in the written instrument, create an absolute defense or prevent the introduction of parol evidence in an action based on fraud in the inducement to contract.'" Opp'n at 22 (quoting *Walid v. Yolanda for Irene Couture, Inc.*, 425 N.J. Super. 171, 185 (App. Div. 2012)) (internal citation omitted). "[P]arol proof of fraud in the inducement is not considered as either additional or substitutionary but rather as indicating that the instrument is, by reason of the fraud, void or voidable." *Ocean Cape Hotel Corp. v. Masefield Corp.*, 164 A.2d 607, 611 (N.J. Super. Ct. App. Div. 1960). Because under New Jersey law "fraud in the inducement is an exception to the general rule that parol evidence prohibits the introduction of extrinsic evidence that tends to alter an integrated written document," *Miranda v. MarineMax, Inc.*, No. A-4186-11T4, 2013 WL 5508045, at *5 (N.J. Super. Ct. App. Div. Oct. 7, 2013), Plaintiffs contend that the merger clause in the Agreement (§ 10.14) cannot be the sole basis on which to dismiss their claims for fraud in the inducement and negligent misrepresentation. Opp'n at 28. Plaintiffs assert that this is a substantial difference between the laws of Georgia and New Jersey, which renders issue preclusion inapplicable.

While it is true that there are exceptions to the parol evidence rule in New Jersey, courts must distinguish between "fraud regarding matters expressly addressed in the integrated writing and fraud regarding matters wholly extraneous to the writing." *Filmlife, Inc. v. Mal "Z" Ena, Inc.*, 251 N.J. Super. 570, 574 (App. Div. 1991). Thus, "[e]ven when a party asserts fraudulent inducement, the parol evidence rule precludes the party from introducing extrinsic evidence that contradicts the express terms in an integrated agreement." *MarineMax, Inc.*, No. A-4186-11T4, 2013 WL 5508045, at *5. "The critical issue is whether the allegedly tortious conduct is extraneous to the contract." *Emerson Radio Corp. v. Orion Sales, Inc.*, No. 95-6455, 2000 WL 49361 at *7 (D.N.J. Jan. 10, 2000), *aff'd in part, rev'd in part on other grounds*, 253 F.3d 159 (3d

Cir. 2001) (citations omitted).   For example, parol evidence was appropriate when material misrepresentations were alleged regarding the income of a business to be acquired, *Walid*, 425 N.J. Super. at 186, and where a "signature is obtained by fraud or imposition in the execution of the contract, as by reason of a willful misrepresentation as to its purport or contents," *Winoka Village v. Tate,* 84 A.2d 626, 628 (App. Div. 1951) (citations omitted).

Defendant argues that the alleged misrepresentations are intrinsic to the Agreement because they would contradict and modify the Agreement's plain meaning as to Ebix's future performance obligations.   Reply at 13.   In contrast, Plaintiffs maintain that the following misrepresentations—(i) that Ebix structured the earnout thresholds so that Plaintiffs could readily achieve them; (ii) that Ebix would provide logistic and operational support to enable Plaintiffs to achieve the earnout thresholds; and (iii) that Plaintiffs should consider the earnout an assured part of the compensation for the purchase of the business assets and operations of DCM and i3—"do not vary express terms of the acquisition agreement, and thus readily fall within the scope of the exception to the parol evidence rule for fraud in the inducement claims."  Opp'n at 27-28.

In the Court's view, the alleged misrepresentations are intrinsic to the agreement because they relate to and contradict Defendant and Ebix's obligations under the Agreement.  *See RNC Sys., Inc. v. Mod. Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 452 (D.N.J. 2012).  For example, as the Arbitrator identified, the Agreement contains no "best efforts" provision or warranty, which Plaintiffs could have negotiated.  Final Arbitration Award at 19; Agreement.  Plaintiffs' failure to obtain that provision during the negotiation process effectively gave Ebix unfettered discretion to manage its newly acquired assets how it saw best.  It follows that any statements allegedly made before the Agreement, regarding how the company would operate in the future, are contradicted by the Agreement.  *See Blanos v. Penn Mutual Life Ins. Co.*, No. 09-5174, 2010 WL 143670, at

*7 (D.N.J. Jan. 12, 2010) (dismissing a fraudulent inducement claim where the plaintiff sought to litigate oral representations made regarding future hiring and logistical practices because the express terms of the contract at issue included an "entire understanding" clause).

The intrinsic nature of the misrepresentations can also be seen through the allegation that Raina stated that Plaintiffs should consider the earn-out an assured part of the compensation. The Agreement makes clear that the earn-out was not guaranteed, but instead, needed to be earned by Plaintiffs by meeting certain revenue thresholds. In sum, the alleged misrepresentations made by Raina are far from those in a case like *Walid*, where the material misrepresentations were wholly extrinsic to the contract between the parties. 425 N.J. Super. at 186.

Indeed, courts have recognized that "it is manifestly unreasonable" for a party entering a contract to rely on prior oral statements when the express language of the contract is written "explicitly nullifying any previous agreements, oral or written." *Alexander v. CIGNA Corp.,* 991 F. Supp. 427, 436 (D.N.J. 1998). "This is especially true when the parties to the contract are 'particularly experienced, knowledgeable business people.'" *RNC Sys.*, 861 F. Supp 2d at 455 (quoting *id.*). Section 10.14 of the Agreement makes clear that the Agreement "supersedes" all prior communications and representations, "whether oral or written, by any officer, employee, or representative of either party." The misrepresentations alleged by Plaintiffs concern "fraud regarding matters expressly addressed in the integrated writing," *Filmlife, Inc.*, 251 N.J. Super. at 574, and therefore, do not raise warrant admitting parol evidence.

As noted above, in determining whether the laws in two jurisdictions are substantially similar for issue preclusion purposes, the Court considers several factors, including whether there is substantial overlap of evidence or argument and whether the evidence in both proceedings involves application of the same rule of law. *See Strassman*, 2018 WL 1251636, at *5-6. Having

decided that under New Jersey law the parol evidence proffered by Plaintiffs would not be considered given its intrinsic nature, the Court further determines that 'there [is] a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first."  *Peloro*, 488 F.3d at 176 (cleaned up).  In turn, the Court concludes it is appropriate to apply issue preclusion to Plaintiffs' fraudulent inducement and negligent misrepresentation claims.

### 2.    *Tortious interference*

Plaintiffs also identify one difference between the laws of Georgia and New Jersey with respect to a tortious interference claim:  whether the tortfeasor must be a stranger to the contract. Opp'n at 23.

In Georgia, to state a claim for tortious inference with contractual or business relations, a plaintiff must show that the defendant is a "stranger" to the contract.  *Renden, Inc. v. Liberty Real Est. Ltd. P'ship III*, 213 Ga. App. 333, 335 (1994).  For example, a CEO was determined not to be a stranger to a contract between the company he ran and a former employee, even where the CEO was not alleged to have been personally involved in the contract negotiations.  *See Barkley v. StackPath, LLC*, No. 21-3763, 2022 WL 2764074, at *6 (N.D. Ga. July 15, 2022).

In contrast, Plaintiffs argue, there is no such requirement in New Jersey for a tortious interferer to be a stranger.  Opp'n at 23 (quoting *In re B.S. Livingston & Co., Inc.*, 186 B.R. 841, 867 (D.N.J. 1995)).  Thus, unlike in Georgia, in New Jersey, Raina could be liable for tortious interference in the contract between Plaintiffs and Ebix because a corporate officer can be liable for his own torts, including tortious interference.  *See id.*

In the years since the cases that Plaintiffs cite, "a clear-cut consensus has emerged [in New Jersey] that if an employee or agent is acting on behalf of his or her employer or principal, then no

24

action for tortious interference will lie." *DiMaria Const., Inc. v. Interarch*, 351 N.J. Super. 558, 568 (App. Div. 2001), *aff'd*, 172 N.J. 182 (2002); *see also Omert v. Freundt & Assocs. Ins. Servs., Inc.*, No. 16-2529, 2017 WL 436262, at *2 (D.N.J. Jan. 31, 2017) ("When the alleged interference is done by an employee acting on behalf of the contracting employer there can be no liability.") (cleaned up).

In New Jersey, an action for tortious interference protects parties from "*outside* interference." *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 752-53 (1989). Building on the New Jersey Supreme Court's holding in *Printing Mart*, the Third Circuit reasoned that an employee falls outside the scope of his employment if the employee "acts for personal motives, out of malice, beyond his authority, or otherwise not in good faith in the corporate interest." *Varrallo v. Hammond Inc.*, 94 F.3d 842, 849 n.11 (3d Cir. 1996) (internal quotations omitted).

Plaintiffs contend the Complaint sufficiently alleges that Defendant's tortious conduct was motivated by malice because Defendant maliciously sought to artificially inflate Ebix's revenues through "cookie jar accounting" to ultimately increase his personal salary and bonus. Opp'n at 28. But the Arbitrator found "there is no evidence to support [Plaintiffs'] theory that Ebix engaged in 'cookie jar accounting.'" Final Arbitration Award at 12. Plaintiffs cannot rely on this factual assertion, which has already been decided in the Arbitration. Therefore, Plaintiffs fail to allege any facts that show Raina was acting outside the scope of his authority, out of malice, or for personal motives in connection with the Agreement. The Court concludes that to the extent a conflict exists between the tortious interference laws of New Jersey and Georgia, it is not substantial enough to defeat a finding of identity of issues for issue preclusion purposes because Plaintiffs' allegations are based on the same factual questions that were presented and determined

in the prior litigation.   Therefore, regardless of whether New Jersey or Georgia law applies, based on the facts put forward by Plaintiffs, Defendant would not be considered a stranger to the Agreement. *See Raytech Corp.*, 54 F.3d at 191.  Having concluded there is no material conflict between the relevant laws of Georgia and New Jersey, the Court finds it appropriate to bar Plaintiffs from relitigating any claims previously determined by the Arbitrator.

###### 3.    *Fairness factors*

Factors that weigh in favor of applying collateral estoppel include "conservation of judicial resources; avoidance of repetitious litigation; and prevention of waste, harassment, uncertainty and inconsistency."  *Allen*, 26 A.3d at 445 (citations and internal quotation marks omitted).  Factors that weigh against the application of collateral estoppel include:  (1) whether the party against whom preclusion is sought could not have obtained review of the prior judgment; (2) the quality or extent of the procedures in the two actions is different; (3) it was not foreseeable at the time of the prior action that the issue would arise in subsequent litigation; and (4) the precluded party did not have an adequate opportunity to obtain a full and fair adjudication in the prior action.  *Wallace*, 2016 WL 5403088, at *3 (citing *id.*).

The Court concludes the fairness factors overwhelmingly weigh in favor of Defendant.  Applying collateral estoppel conserves judicial resources by keeping this Court from analyzing claims that were thoroughly considered in the Arbitration.  It was entirely foreseeable to Plaintiffs that this action would arise and Plaintiffs had a full and fair opportunity to litigate the same issues raised here in the Arbitration.  Applying collateral estoppel avoids the potential for inconsistency between the decisions of the Arbitrator and this Court.

### C.    Application Of Collateral Estoppel

Under the principles of issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  The Court now turns to determine which allegations are barred by issue preclusion, and whether Plaintiffs can state a claim.

#### 1.    *Tortious interference*

To succeed on a claim for tortious interference, a plaintiff must prove: (1) a reasonable expectation of economic advantage to plaintiff, (2) interference done intentionally and with "malice," (3) causal connection between the interference and the loss of prospective gain, and (4) actual damages.  *Varrallo*, 94 F.3d at 848 (citing *Printing Mart*, 116 N.J. at 751); *see also Megatron Music Management, Inc., v. Energy Bbdo, Inc.*, No. 21-69, 2021 WL 3732900, at *4 (D.N.J. Aug. 24, 2021).

Plaintiffs allege that "Raina's tortious conduct was motivated by a malicious intent to artificially inflate Ebix's revenues through 'cookie jar accounting' and thus increase his own salary and bonus."  Opp'n at 28.  But as noted above, the Arbitrator was clear:  there was no evidence to support [Plaintiffs'] theory that Ebix engaged in 'cookie jar accounting.'"  Final Arbitration Award at 12.  Because Plaintiffs' sole allegation to show Raina acted with malice is barred by issue preclusion, the Court could dismiss Plaintiffs' tortious interference claim on this basis alone given their failure to establish the second element.

In addition, to prevail on a tortious interference claim, Plaintiffs must allege that Defendant intentionally interfered with "the performance of a contract . . . between another and a *third person* by inducing or otherwise causing the third person not to perform the contract."  *Nostrame v.*

27

*Santiago*, 61 A.3d 893, 901 (N.J. 2013) (internal quotations omitted).  Again, Raina, acting as CEO of Ebix and negotiating the contract on behalf of Ebix, cannot be shown to be a third party to the contract absent some proof he "act[ed] for personal motives, out of malice, beyond his authority, or otherwise not in good faith in the corporate interest." *Varrallo*, 94 F.3d at 849 n.11. Because the Arbitrator decided against Plaintiffs' sole allegation of malice, Plaintiffs cannot show that Defendant was acting beyond the scope of his corporate capacity when negotiating the Agreement, and thus, no third-party allegedly interfered with the contract.  Plaintiffs' tortious interference claim falls on this second basis.  The Court will **DISMISS** Count III of the Complaint, Plaintiffs' tortious interference claim, for failure to state a claim.[19]

### 2.     *Fraud in the inducement and negligent misrepresentation*

Next, the Court considers whether Plaintiffs state a fraud in the inducement or negligent misrepresentation claim.  To state a fraud in the inducement claim, a plaintiff must show: "(1) a material representation of a presently existing or past fact; (2) made with knowledge of its falsity; and (3) with the intention that the other party rely thereof; (4) resulting in reliance by that party; (5) to his detriment." *RNC Sys.*, 861 F. Supp. 2d at 451 (internal citations omitted).  The misrepresentations alleged must be "*extraneous* to the parties' contract." *Montclair State Univ. v. Oracle USA, Inc.*, No. 11-2867, 2012 WL 3647427, at *4 (D.N.J. Aug. 23, 2012) (emphasis in original).

---

[19] Because the Court finds that Plaintiff's claims against Defendants are barred as a matter of law, amendment would be futile.  *See Prudential Ins. Co. of Am. v. Bank of Am., Nat. Ass'n*, 14 F. Supp. 3d 591, 596 (D.N.J. 2014) ("Dismissal of a count in a complaint with prejudice is appropriate if amendment would be inequitable or futile."); *Ernande v. Lynch*, No. 10-5614, 2011 WL 13196609, at *1 (D.N.J. July 25, 2011) (Amendment is futile when the plaintiff's claims "are not viable.").

To prevail on a negligent misrepresentation claim, a plaintiff must show: "(1) an incorrect statement, (2) negligently made and (3) justifiably relied on, [which] (4) may be the basis for recovery of damages." *Kuzian v. Electrolux Home Prods., Inc.*, 937 F. Supp. 2d 599, 615 (D.N.J. 2013).

Plaintiffs' fraud in the inducement and negligent misrepresentation claims are based on five alleged misrepresentations made by Raina:  (i) Ebix would structure the earn-out thresholds so that Plaintiffs could readily achieve them;  (ii) Ebix would provide logistic and operational support to enable Plaintiffs to achieve the earn-out thresholds; (iii) Plaintiffs should consider the earn-out an assured part of the compensation for the purchase of the business assets and operations of DCM and i3; (iv) Defendant or Ebix would provide financial assistance to Chaluvadi if he was ultimately liable for a brokerage fee to Sherman; and (v) Ebix would include the gross revenues of any acquisition identified by Chaluvadi in the earn-out thresholds under the DCM Agreement. Compl. ¶ 64.

Although Defendant argues that the Arbitrator addressed all five misrepresentations, Mot. at 9-11, Plaintiffs raise arguments in opposition solely to the first three.  As Defendant notes, Plaintiffs have therefore waived their opportunity to contest whether the arbitrator decided the two unaddressed allegations.[20]  *Ankele v. Hambrick*, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003), *aff'd*, 136 F. App'x 551 (3d Cir. 2005).

Of those five, the three misrepresentations that Plaintiffs discuss in their Opposition are: (i) that Ebix structured the earnout thresholds so that Plaintiffs could readily achieve them; (ii) that

---

[20] The two waived alleged misrepresentation were: (1) Defendant or Ebix would provide financial assistance to Chaluvadi if he was ultimately liable for a brokerage fee to Sherman; and (2) Ebix would include the gross revenues of any acquisition identified by Chaluvadi in the earn-out thresholds under the DCM Agreement.  Compl. ¶ 64.

Ebix would provide logistic and operational support to enable Plaintiffs to achieve the earnout thresholds; and (iii) that Plaintiffs should consider the earnout an assured part of the compensation for the purchase of the business assets and operations of DCM and i3.  Opp'n at 31-32.

The first and third misrepresentations were addressed in the Final Arbitration Award.  The Arbitrator, considering the Agreement between the parties, explained that "[b]y its very nature, a performance earn-out is contingent upon future performance. If it was a guaranteed payment, it would not be an earn-out."  Final Arbitration Award at 12.  The Arbitrator went on to state that any "stray statements" made by Defendant to the effect that Chaluvadi was guaranteed the earn-out "did not turn a performance earn-out into a guaranteed deferred payment."  *Id.* at 13.

In making these findings, the Arbitrator interpreted the first and third alleged misrepresentations to mean that Chaluvadi would receive the benefit personally (as the sole owner of the acquired companies) if DCM and i3 achieved the contractually agreed to earn-outs, not that the earn-outs were guaranteed to be paid to him.  Given the Arbitrator's conclusions, Plaintiffs cannot show Defendant possessed the requisite fraudulent intent in these two misrepresentations.

With respect to the second misrepresentation (logistical and operational support to Plaintiffs to achieve the earn-outs), the Arbitrator found that Ebix terminated DCM and i3's former employees "for sound business reasons - not to impede [Plaintiff's] ability to achieve the earn-out revenues thresholds."  Final Arbitration Award at 15.  Again, Plaintiffs cannot show Raina had the requisite fraudulent intent based on this alleged misrepresentation, and thus, their fraud in the inducement claim fails.

Plaintiff's fraud in the inducement fails for another reason too:  the Arbitrator did not find any damages linked to lost revenues to the terminated DCM and i3 employees.  The lack of damages is also fatal to Plaintiffs' negligent misrepresentation claim.  Therefore, the Court will

**DISMISS** Counts I and III, Plaintiffs' fraud in the inducement and negligent misrepresentation claims. [21]

## IV.    CONCLUSION

For the reasons above, the Court will **GRANT** Defendant's Motion and **DISMISS** the Complaint ***with prejudice***.  An appropriate Order accompanies this Opinion.


June 17, 2025
Date                                                                         Evelyn Padin, U.S.D.J.

---

[21] Again, because the Court finds that Plaintiff's claims against Defendants are barred as a matter of law, amendment would be futile.  *See supra* n.19.